O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 2:04-cr-01189-CAS |
| Plaintiff, | ) |
| v. | ) **ORDER DENYING MOTION FOR REDUCTION IN SENTENCE UNDER 18 U.S.C. § 3582 AND THE CARES ACT OF 2020** |
| GABRIEL GONZALEZ, | ) |
| Defendant. | ) |

## I. INTRODUCTION AND BACKGROUND

On August 25, 2004, a grand jury indicted defendant Gabriel Gonzalez ("Gonzalez"), a former Los Angeles County Sheriff's deputy, with acting under color of law in violation of 18 U.S.C. § 242. Dkt. 1. Specifically, the indictment charged Gonzalez with using his position as a law enforcement officer to coerce female victims into engaging in non-consensual, sexual acts. Id.

Gonzalez's trial commenced on February 14, 2006. Dkt. 78. On February 27, 2006, the jury returned its verdict, convicting Gonzalez on three counts of violating 18 U.S.C. § 242. Dkt. 103. On August 4, 2006, the Court sentenced Gonzalez to serve 360 months in prison, as well as a term of five years of supervised release. Dkt. 118.

On April 15, 2020, Gonzalez, acting *pro se*, filed a motion seeking compassionate release or, in the alternative, home confinement. Dkt. 202 ("Mot."). Gonzalez filed a supplement to his motion on May 18, 2020. Dkt. 205 ("Supp."). The government filed an opposition on May 20, 2020. Dkt. 206 ("Opp."). Gonzalez filed a reply on July 13, 2020. Dkt. 213 ("Reply"). The government filed a supplemental brief on July 31, 2020. Dkt. 216 ("Gov. Supp.").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (internal alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

## III.  DISCUSSION

### A.  Request for Compassionate Release Pursuant to the FSA

#### 1.  Exhaustion of Legal Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (internal alterations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]" United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal citation omitted).

Here, Gonzalez avers that he "has previously filed his petition for home confinement/Sentence Reduction with the Warden via electronic notification on, or about, the first part of April." Supp. at 1–2. In the alternative, Gonzalez urges that the Court should "waive the exhaustion requirement, due to the imminent COVID-19 threat, to recognize that his electronic notification to the Warden was a good-faith attempt to comply

with the only exhaustion remedy made available to him, and that exhaustion would be futile under the circumstances[.]" Supp. at 4.  In response, the government disputes that Gonzalez has satisfied Section § 3582(c)(1)(A)'s exhaustion requirement.  See Opp. According to the government, while Gonzalez submitted a request to the warden of Federal Correctional Institution, Forrest City ("FCI Forrest City") seeking home confinement pursuant the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Gonzalez "only requested home confinement, *not* compassionate release . . . which is treated differently from a request for compassionate release." Opp. at 7 n.1 (emphasis in original).

The Court need not, at this juncture, determine whether Gonzalez has satisfied Section 3582(c)'s exhaustion requirement or whether the Court may excuse his failure to do so.  That is because, as discussed more fully below, Gonzalez's request for compassionate release fails on the merits, since Gonzalez does not present "extraordinary and compelling" reasons warranting a sentence reduction and because Gonzalez fails to establish that he is not a danger to the community.

**2.   Gonzalez Fails to Establish Extraordinary and Compelling Reasons Warranting Compassionate Release**

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 3582(c)(1)(A)). A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting health conditions that might make a COVID-19 infection more lethal." United States v. O'Neil, No. 3:11-cr-00017, 2020 WL 2892236, at *6 (S.D. Iowa June 2, 2020).

At the time that Gonzalez filed his motion for compassionate release on April 15, 2020, and a supplement to his motion on May 18, 2020, Gonzalez complained generally

/ / /

/ / /

of the BOP's allegedly deficient efforts to protect against the spread of COVID-19 at FCI Forrest City.[1] See Mot. at 4–7; see also Supp. In addition, Gonzalez urged that were he to contract COVID-19, Gonzalez would be particularly susceptible to health complications because he suffers from "Gastroesophogeal [sic] Reflux Disease, Hypothyroidism, and Ocular Hypertension requiring medication to prevent imminent blindness."[2] Mot. at 5. After Gonzalez filed his motion for compassionate release and a supplement to his motion, however, Gonzalez then asserted—for the first time in reply—that he had, in fact, contracted COVID-19 at FCI Forrest City. See generally Reply.

The government subsequently filed its own supplemental brief, indicating that: (1) Gonzalez tested positive for COVID-19 from a sample taken on May 13, 2020; (2) Gonzalez has presented as asymptomatic and has consistently denied suffering from any symptoms commonly associated with COVID-19, including, *inter alia*, cough, muscle pain, fatigue, sore throat, loss of taste or smell, or chills; and (3) Gonzalez subsequently tested negative for COVID-19 on June 23, 2020. See generally Gov. Supp. The

---

[1] The government disputes that the BOP has taken insufficient measures to protect against the spread of COVID-19 at FCI Forrest City. See Opp. at 11–12 ('On April 14, 2020, [the] BOP at FCI-Forrest City circulated a memorandum identifying additional measures it was undertaking to stop [the] spread of the virus, including suspending all programming, serving meals inside units, prohibiting congregating and gathering of inmates, prohibiting social gathering at inmates' doors or cubicles, and encouraging inmates to wear provided masks.").

[2] Other courts have determined that at least two of these medical conditions do not, in light of the current COVID-19 pandemic, present undue risks of causing a degradation of health sufficient to warrant compassionate release. See United States v. Cantatore, No. 16-cr-0189-ES, 2020 WL 2611536, at *4 (D.N.J. May 21, 2020) (denying motion for compassionate release because "Defendant has not demonstrated that she is at an increased risk of developing serious illness from COVID-19 based on her hypothyroidism."); United States v. Hylander, No. 18-cr-60017, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 20, 2020) (denying inmate's motion for compassionate release in light of COVID-19 where inmate suffered conditions including, inter alia, "gastroesophageal reflux disease").

government also submits copies of Gonzalez's medical records from the BOP which confirm Gonzalez's initial COVID-19 diagnosis, Gonzalez's repeated confirmations that he was asymptomatic, and Gonzalez's subsequently testing negative for COVID-19 on June 23, 2020. See generally Dkt. 216-1.

A number of courts have determined that "a positive test for COVID-19 cannot demonstrate an extraordinary and compelling reason to justify release absent any symptoms, lasting complications, or inadequate care." United States v. Harris, No. 4:18-cr-00115, 2020 WL 4462256, at *2 (N.D. Ohio Aug. 4, 2020) (collecting cases). Because Gonzalez fails to establish that he suffered any symptoms or complications as a result of his initial COVID-19 diagnoses—and since Gonzalez has subsequently tested negative for COVID-19—the Court cannot conclude, at this juncture, that "extraordinary and compelling" reasons exist that warrant a reduction in Gonzalez's sentence. See United States v. Zubkov, No. 14-cr-00773-RA, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020) (publication forthcoming) (determining that inmate failed to present "extraordinary and compelling" reasons justifying compassionate release where inmate contracted COVID-19 but subsequently "recovered"); accord United States v. Koval, No. 1:17-cr-00281-DAD-BAM, 2020 WL 4476554, at *5 (E.D. Cal. Aug. 4, 2020) ("the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A) in part because defendant . . . has already contracted COVID-19."); United States v. Alaniz, No. 15-cr-00329-DAD-BAM, 2020 WL 4059581, at *5 (E.D. Cal. July 20, 2020) ( denying inmate's motion for compassionate release because inmate "has already contracted COVID-19 and, fortunately, is now considered to have recovered from the virus. As a result, granting him release arguably will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19."); United States v. Purry, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020) ("The premise of [inmate's] request was that his release would help prevent him from contracting the virus. That need vanished when [inmate] tested positive for the virus.").

In accordance with the foregoing, the Court concludes, at this juncture, that Gonzalez fails to establish "extraordinary and compelling" reasons warranting a reduction in his sentence.

### 3. Gonzalez Presents a Danger to the Community if Released

In addition, prior to granting compassionate release, and "[e]ven where extraordinary and compelling reasons exist," the Court "must consider whether the defendant is 'a danger to the safety of any other person or to the community[.]'" Mondaca, 2020 WL 1029024, at *3. "To make this assessment," the Court considers a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose." Id.

The Court imposed a custodial sentence of 360 months in prison because Gonzalez was convicted of abusing his position of trust as a law enforcement officer to coerce a number of victims into engaging in non-consensual, sexual acts. Accordingly, due to the nature of Gonzalez's underlying misconduct, the Court concludes that he would present a danger to the community if granted compassionate release. See United States v. Schultz, No. 17-cr-193-S, 2020 WL 2764193, at *8 (W.D.N.Y. May 28, 2020) (denying inmate's motion for compassionate release because "given the manipulative and predatory nature of Schultz's criminal conduct and his history of sexual misconduct, this Court finds that he presents a danger to the community if released.").

### B. Request for Home Confinement Pursuant to the CARES Act

Alternatively, Gonzalez "seeks . . . to be assigned home confinement under the provisions of the CARES ACT, in light of the pandemic emergency involving the spread of the COVID-19 virus." Mot. at 1. "On March 27, 2020, the CARES Act was signed into law." United States v. Williams, No. 2:12-cr-539, 2020 WL 1940836, at *1 (S.D. Tex. Apr. 22, 2020). "The CARES Act expanded the maximum amount of time that a prisoner

may spend in home confinement: 'if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement.'" United States v. Serfass, No. 3:15-cr-39, 2020 WL 1874126, at *3 (M.D. Pa. Apr. 15, 2020) (internal citations and alterations omitted). In the form of memoranda dated March 26, 2020 and April 3, 2020, "[t]he Attorney General has made such a finding regarding the emergency conditions that now exist as a result of the coronavirus." United States v. Engleson, No. 13-cr-340-RJS, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020).

Gonzalez fails to establish any basis from which the Court can order the BOP to assign Gonzalez to home confinement. As an initial matter, "[t]he CARES Act authorizes the BOP—not courts—to expand the use of home confinement." United States v. Fulton, No. 16-cr-40059-DDC, 2020 WL 2395219, at *1 (D. Kan. May 12, 2020); accord United States v. Read-Forbes, No. 12-cr-20099-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Coker, No. 3:14-cr-085, 2020 WL 1877800, at *2 (E.D. Tenn. Apr. 15, 2020) ("The CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons."). Even assuming *arguendo* that the Court could, pursuant the CARES Act, order that the BOP assign an inmate to home detention, Gonzalez is not eligible for home confinement because he does not satisfy the criterion set forth in the Attorney General's applicable memoranda which establish the parameters of those inmates that the BOP may consider for home confinement. For example, the Attorney General's March 26, 2020 memorandum instructs that "[s]ome offenses, *such as sex offenses*, will render an inmate eligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention." See Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons Regarding "Prioritization of Home

Confinement As Appropriate in Response to COVID-19 Pandemic," Mar. 26, 2020 (available at https://www.justice.gov/file/1262731/download) (emphasis added). Gonzalez was convicted for abusing his position of trust as a law enforcement officer to coerce victims into engaging in non-consensual, sexual acts.[3] Moreover, to the extent that Gonzalez requests that the Court *recommend* to the BOP that the BOP assign Gonzalez to home confinement, the Court declines to do so. See United States v. Justice, No. 3:14-cr-103, 2020 WL 2748044, at *1–2 (E.D. Tenn. May 27, 2020) (nothing that "[a]lthough a sentencing court may *recommend* a particular type of prison facility during sentencing, any order, recommendation or request by a sentencing court . . . has no binding effect on the authority of the Bureau of Prisons to determine or change the place of imprisonment" and denying inmate's request for home confinement recommendation pursuant to the CARES Act "because the Bureau of Prisons is in the best position to determine the proper placement of inmates taking into account individual considerations based on an inmate's background, medical history, and general considerations about public safety") (emphasis in original).

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Gonzalez's motion **without prejudice**.

**IT IS SO ORDERED.**

DATED:  August 6, 2020

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

---

[3]   Indeed, the warden at FCI Forrest City expressly rejected Gonzalez's request for home confinement pursuant to the CARES Act on the grounds that Gonzales "do[es] not fit the criteria based on a sex offense and history of violence (Rape/Sexual Acts by Force.)" Dkt. 206-1.