United States District Court
Central District of California

FILED
CLERK, U.S. DISTRICT COURT

September 9, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: CMJ                DEPUTY

United States of America
Plaintiff

Case Number
CR-04-1189(A)-CAS

v.

Gabriel Gonzalez
Defendant, Pro Se

Reply to government's medical record inquiry

Gonzalez asks this honorable court to find that Gonzalez has received no medical care or treatment for his Coronavirus infection and is entitled to compassionate release or other safeguard from the continuing harms posed to him.

**The government's findings**

The government's recent inquiry into Forrest City's medical records show:

- Gonzalez was COVID-19 asymptomatic on or about 5/13/20 when he was first tested by the CDC.

- Gonzalez was quarantined beginning 5/20/20 as a result of testing positive for the Coronavirus.

- To the present date, Gonzalez has received no interview, examination, imaging examination, or medical treatment for his infection except for several weeks of temperature checks which were given to all prisoners regardless of their infection status.

- Despite the prison's assertion that he is now clear of the virus Gonzalez continues to remain in quarantine with approximately 160 infected prisoners.

**I.   a.  The prison has adopted a practice of declaring an infected prisoner 'recovered' when 14-days has elapsed from the date he was discovered to be infected.**

This practice is not only dangerous, but is irresponsible because there is no way to discern if the prisoner's condition has worsened, has changed, or has

resulted in pain or injury solely by relying on the passage of time.

Gonzalez declares to have developed moderate symptoms during his course of infection and for months has begged medical services to examine him and begin treatment. (see Exhibits requesting medical care submitted in Gonzalez' motion 7/15/20). The fact that Gonzalez has suffered moderately painful symptoms is elaborated in his declaration. (Exhibits AA and II).

Gonzalez intentionally chose not to declare his symptoms through the semi-public prison e-mail system for fear he would be placed in a punitive-like quarantine environment as he has witnessed to be the practice when others have complained of as little as a cough. These quarantine areas include being housed in the prison's brick-and-concrete woodshop, the malodorous concrete gymnasium, the SHU, or even in the notoriously fridgid 'B' building areas. Instead, Gonzalez' goal was to discuss his discomforts with his primary physician, M.D. Kapur, in order to discuss his symptoms, pains, and treatment plan.

**b.   Gonzalez' medical records are incorrect and misleading.**

Gonzalez asserts he has never received a 'clinical encounter performed at health services' with Dr. Kapur, or any other medical technician and that the generic title used in his, and all prisoner's medical records, is misleading and inaccurate. The boilerplate denial of symptoms appears to be a rote recitation inserted in each prisoner's file subsequent to medical staff's speculation of recovery for each prisoner. (see Declaration Exhibits).

In fact, prisoner's who have been placed in the various areas of quarantine receive the same type of treatment (or lack of medical treatment) without any indication differing from the records held by asymptomatic prisoners. Aside from receiving the same temperature checks done in the housing units, the only difference in medical treatment appears to be in their assigned housing. This point supports Gonzalez'

previous assertion that the CDC's study at Forrest City is based upon observing the spread and rate of infection among prisoners of differing categorical stages of infection.  The CDC was never here to treat or contain the virus and it's published guidelines to the public are based, in part, upon observations of the suffering and degeneration of prisoner's health at FCI Forrest City.

The only prisoners to have received meaningful medical care have been those too far progressed to care for themselves and who were removed to off-site hospitals for treatment.

Cumulatively, over 1300 prisoners and staff at Forrest City have contracted the Coronavirus under this regime.  Beginning the latter part of July, Forrest City-Low is experiencing a resurgence of infected as several, previously untainted housing units (i.e. M/A and H/D), are producing large numbers of new infections. There exists, also, a number of prisoners who are experiencing symptoms of reinfection despite having been in quarantine past the 14-day recommended time.  (Exhibit AA).


II.   **The prison at Forrest City remains unsafe and hostile to contemporary standards of ethical prisoner treatment.**

a. **The U.S. Department of Labor Occupational Safety and Health Administration (OSHA) and the prison guard's union endorse Gonzalez' perceived failures of the prison.**


In response to a recent complaint filed by Shane Fausey, Council President of Prison Locals 33, OSHA issued an "Imminent Danger Report" specifically naming Forrest City, among others, as "proliferating the spread of a known deadly contagion both within our prison system and to our surrounding communities."  (Exhibit BB, p.3, parag. 2).  The complaint and report cite numerous instances of BOP violations of CDC guidelines which have ultimately resulted in dozens of guard's deaths, and hundreds of prisoner deaths.

For the sake of judicial economy, OSHA's Imminent Danger Report stands to speak for itself.

**b. The BOP strikes back.**

In response to similar criticism of the BOP's mismanged handling of Coronavirus protocol, the Agency blamed the Centers for Disease Control and Prevention guidelines for many of its cited problems. (Exhibit CC, pg. 2, parag. 6-"not my fault"). This response came shortly after an exceptionally harsh Pandemic Response Report issued by the Department of Justice Office of the Inspector General. (Exhibit DD). Although this report focuses mostly on recent events in other BOP prisons, its findings are strikingly identical to the practices and deficiencies at Forrest City.

Generally, the report cites COVID-19 transmission has been attributed to BOP staff moving between various prison areas and between prisons. There is no limitation to staff movement at Forrest City and the prison is experiencing recent increases in positive cases. (Exhibit EE).

Of interest is the OIG's finding that staff screening, examination, and treatment, much like prisoner screening and treatment, has been limited to "self-reporting and temperature checks." (Exhibit *DD*, p.*9*, parag. 2). And that the isolation of prisoners in various levels of quarantine are referred to as being in "medical isolation" to distinguish it from punitive action. (Id. p.*11*, fn 19).

This denotation implies the existence of punitive treatment and punitive conditions under this procedure, much like the conditions described by prisoner Green. (Exhibit FF).

Finally, the OIG reports that the CDC recommended personal protective equipment and face coverings be issued to inmates and staff and that the issue of surgical masks was to be used "as an interim measure" in implementing CDC guidance. (Exhibit *DD* p.*13*, parag. 2).

The distribution of makeshift cloth face coverings at Forrest City remain the only PPE issue to date and are uncertified as to their quality and effectiveness in preventing COVID-19 transmission. (Exhibit GG)(not to court: This exhibit was unused and remains sterile in consideration for the court's safety in its contact

and examination of its contents).

The findings and conclusions of the OIG indicate the BOP's practices fall short of the CDC's minimum standards and guidance and indicate a need for significant improvement before minimum levels of safety are met for staff, prisoners, and the surrounding communities.

## III. Conclusion

The prison at Forrest City no longer claims that its cloth face coverings prevent infection.  Instead, the prison claims the prisoner-issue PPE mask will only "help slow the spread of COVID-19" (Exhibit HH) indicating infection is imminent. This condition is particularly harsh in knowing the prison provides no medical treatment to those who test positive, and that the government has confirmed "it does not appear [Gonzalez] received treatment."  (Doc. 216, p.3, item d).

Prison medical records further obfuscate the truth as to the medical care and treatment received by prisoners because a rote response is used to address each prisoner's record which rely only upon the passage of time for a determination of recovery.  (see declaration exhibits).  Additional examples of this mechanical medical reporting are available upon request by this court, or by the government.

Meanwhile, OSHA, the OIG, the prison guard's union, and experts everywhere continue to declare this prison's environment to be lethal and an affront to the dignity of humanity.  (Exhibit JJ).  Many courts have followed suit and have issued compassionate release orders, including once recently to a prisoner with a life sentence-Felix Walls on or about 4/24/20 who was housed at Forrest City.  Other recent releases from  Forrest City prison include:

- Chuckie Lacy 2020 US Dist (Illinois) LEXIS 76849 May 1, 2020 15-CR-30038,
- Michael Anderson Springfield, Illinois LEXIS 86550 May 18,2020 15-CR-30015,

- Keith Halliburton Central Dist. Illinois LEXIS 102241 June 11,2020 17-CR-20028

- Lamar Chapman N. Dist. Illinois LEXIS 96356 June 2, 2020 09-CR-0741

- Willie Joe Mason S. Dist. Mississippi LEXIS 100704 June 9, 2020 3:17-CR-104-CWR

- Martineza Dewan McCall Mid. Dist. Alabama LEXIS 102095 June 4, 2020 2:18-CR-95

- Steven Lavy Dist. of Kansas LEXIS 103861 June 15,2020 17-20033-JAR

Gonzalez prays this court find merit in the points and facts presented throughout this litigation and asks to be placed in the court's custody under the provisions afforded by compassionate release RIS, or any other immediate relief thsi court finds proper and just.

Verification

I have read the foregoing Reply to government's medical record inquiry and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at Forrest City, Arkansas on this 11th day of August, 2020.

Gabriel Gonzalez
Defendant, Pro Se

Certificate of Service

I certify under the penalty of perjury that the foregoing Reply to governmetn's medical record inquiry was placed in the prison's internal mail system, postage pre-paid, for service upon this court via U.S. mail on this 11th day of August, 2020 to 312 N. Spring Street Los Angeles, California 90022. Gonzalez asks this court's clerk to serve all other interested parties by electronic notification and to provide him with a stamped and filed copy of this motion.

Gabriel Gonzalez
Defendant, Pro Se

MEMPHIS P&D
WI 18 12 AUG

◇30515-112◇
Distcourt Clerk
312 N Spring ST
Room G-8
LOS Angeles, CA 90012
United States

-R-T-S-   90012 5205-1N   08/25/20

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER



◇30515-112◇
Gabriel Gonzalez
PO BOX 9000:Low
Federalcorrectionalcomplex
Forrest CITY, AR 72336
United States



CAS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
255 E. TEMPLE STREET Room 180
LOS ANGELES, CALIFORNIA 90012

◇30515-112◇
Gabriel Gonzalez
PO BOX 9000 Low
Federalcorrectionalcomplex
Forrest CITY, AR 72336
United States



CLERK U.S. RECEIVED DISTRICT COURT
SEP - 9 2020
CENTRAL DISTRICT OF CALIFORNIA