FILED
CLERK, U.S. DISTRICT COURT

September 26, 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: CMJ          DEPUTY

United States District Court
Central District of California

United States of America
Plaintiff

Case Number
2:04-CR-1189-CAS

v.

Gabriel Gonzalez
Defendant, Pro Se

Reply to government's opposition motion

Gabriel Gonzalez asks this Honorable court to find good-cause in the points, facts, and authorities presented in this brief and to grant him his requested relief.

This reply brief is made prematurely to this court's order granting Gonzalez the benefit of appointed counsel to represent this matter. Counsel is necessary due to the deficiencies and inadequacies cited in Gonzalez's previously submitted motion and because the issue submitted for consideration is of such magnitude as to constitute a broad scope of applications to persons similarly situated who will be affected by this court's final resolution. For this reason, Gonzalez wishes to preserve his right to amend, supplement, or withdraw this brief pending the discretion of appointed counsel in agreement with Gonzalez's interes, and those of judicial economy.

I. The government claims this court is not bound by SORNA, but fails to cite the State statute or authority granting this court with the authority to apply registration as broadly applicable to all States.

a. The government concedes that Gonzalez's conviction was pre-SORNA and that this court did not require him to register under the federal SORNA statute. (Doc. 250, p.3, L.28). Instead, the government clarifies that the defendant was ordered to register, "as directed by the probation officer." (Id., p.4, L.18).

In accordance with the government's concession on this point is the fact that this condition has already been included in this court's provision that Gonzalez must comply with all State and Federal laws upon release. The inclusion of this additional provision, however, is unnecessarily duplicative and also creates an ambiguity that the probation officer will require registration without first determining which State Gonzalez will be released to and which registration laws will determine the application of this provision. It is in this way that the 'probation officer's discretion' reference is overbroad and vague because it cannot be determined in advance that his non-standard condition can be implemented separately and distinctly from those generally required. Accordingly, the government's assumption that registration with "the" sex offender registry, as opposed to "a" State's registry is vague and premature.

**b.** If Gonzalez were required to register in any State under it's laws then the court's general condition that he 'follow all laws' should be sufficient to satisfy it's repetitive condition that he comply with the probation officer's discretion. Surely, it would be sufficient for Gonzalez to acknowledge any obligation he may have to comply with Cal. Pen. Code § 290, should he return to his home State, if his offense of conviction qualifies for application of this code. But, the government makes no assertion that section 290, nor any other specific code or provision, is applicable and instead encourages this court to dismiss this matter for reasons that this issue is brought under a test that registration as a sex offender pusuant to a State sex offender registration agency, per se, is illegal. Gonzalez has made no such reference to his matter as being resolved under an 'illegality of State code claim. Rather, this matter is brought for correction in that registry is unsupported by SORNA and by the State of California's penal code section 290.

For these reasons, Gonzalez asks that this matter be considered as a challenge to the unconstitutional vagueness, ambiguous presumption, and overbroad duplicity

to this non-standard supervised release condition as distinct from the general supervised release conditions that already include all applicable requirements and obligations.

II. The government's assertion that a State's Probation Officer can determine 'non-standard' or 'special' supervised release conditions is mistaken because it is unconstitutionally vague and overbroad for them to make such independent and discretionary determinations.

As previously mentioned, the federal SORNA statute does not support a registration condition for an offense of conviction pursuant to section 242. The government, however, would have this court believe that enforcement of this unqualified condition could be maintained as long as this court were to order the State to conform to it's wishes in this way. But, the 10th Amendment to the Constitution prohibits such action for at least 2 reasons; (1) The government may not force States to accept an unlegislated policy without first establishing the authority to do so, and (2) The government may not commandeer State governments to impose requirements to implement federal regulatory schemes to enforce an invalidated federal law or action or otherwise inapplicable federal provision.

This sort of commandeering of State government would undermine government accountablility principles because Congress could make a decision, but the states would assume the political responsibility for enforcing a decision that was not theirs and was not part of a legitimate federal regulation. In addition, Congress may not commandeer State officers to implement Federal laws under the guise that there exists a compelling governmental interest sufficient to permit a law that otherwise would violate the 10th Amendment. (505 U.S. 161; also Evan H. Caminker, State Sovereignty and Subordinancy, 95 Colum. L. Rev. 1001 (1995)).

Based on this historical line of reasoning, Gonzalez asserts that a district court or governmental mandated requirement to register, in the manner proscribed in this case, would corrupt the restrictions set forth in the federal regulatory

scheme by simply requiring State officers to execute Federal desires or policies that are beyond the scope of it's legislated laws.

III. If the court is allowed to make statutory determinations that are beyond the scope of the text codified into law, the constraints and parameters set forth by SORNA, or a State's Registration Act, would be meaningless.

a. Gonzalez finds support for this assertion in the dissenting opinion of Gundy (citation omitted-referencing several historical SCOTUS opinions relating to the Separation of Powers doctrine's restraint on legislative powers) because Article I of the Constitution entrusted all of the federal government's legislative power to Congress. In Article II, it assigned the Executive power to the President. And in Article III, it gave independent judges the task of applying the laws to cases and controversies. It is this last provision that is at issue here.

As an effect of this Separation of Powers structure, the Constitution promises that only the people's elected representatives may adopt new federal or State laws restricting liberty. But, the district court in this matter has adopted an extra-constitutional arrangement by enabling itself to include 18 U.S.C. § 242 to be among the list of offenses which qualify for SORNA or State application. This is in conflict with the law governing Federal or State Registration structure and is in contravention to the Framer's constitutional separation of powers design.

b. The delegation of registration requirement parameters at the discretion of the probation officer violates the Separation of Powers doctrine of the Constitution.

As Chief Justice Marshall explained, Congress may not "delegate...powers which are strictly and exclusively legislative." John Locke, one of the thinkers who most influenced the Framer's understanding of the separation of powers, described it;

> The legislative cannot transfer the power of making laws to any other hands; for it being but a delegated power from the people, they who have it cannot pass it over to others. The People alone can appoint the form of the Commonwealth, which is by constituting the legislative, and appointing in whose hands that shall be. And when the People have said we will submit to rules, and be governed by laws made by such men, and in such forms, nobody else can say other men shall make laws for them, nor can the People be bound by any laws but such as are enacted by those whom they have chosen and authorised to make laws for them."

The Framers insisted on this particular arrangement because they believed the new federal government's most dangerous power was the power to enact laws restricting the people's liberty. An "excess of law-making" was, in their words, one of "the diseases to which our governments are most liable." To address the tendency, the Framers went to great lengths to make lawmaking difficult.

Much like the encroachment issue presented to this court here, the Framers warned us against permitting consequences like the objection Gonzalez now asserts. As Madison explained;

> "'[t]here can be no liberty where the legislative and executive powers are united in the same person, or body of magistrates.'"

On this logic, Gonzalez asks that scrutiny be given with an eye towards government overreach where probation officer discretion is given greater accord than that power which is prohibited by the Federal and State SORNA statutes.

c.  If this court were to vest legislative power to the State Probation Officer to exercise his discretion to determine matters of registration law, it would impermissibly expand Executive powers that are otherwise restrained by statutory authority.

This court may have adopted an excessive justification in using it's discretion to expand the scope of SORNA and it's State progeny through granting discretionary rulemaking delegation to the probation officer in this case.

Only Congress may assign the Executive and Judicial branches certain non-legislative responsibilities. While the Constitution vests all federal legislative power in Congress alone, Congress's legislative authority sometimes overlaps with the authority the Constitution separately vests in another branch.

The Supreme Court first used the overlapping principle in 1928 in J.W. Hampton, Jr., & Co. v. United States, where it said that a statute "laying down by legislative Act an intelligible principle to which the [Executive official] is directed to conform" satisfies the separation of powers.

But, this district court's hybrid version of the Court's 'intelligible principle' means of delegation here does not conform with the original meaning of the Constitution, in history, or even in the legislature's intended purpose.

As applicable to this case, the intelligible principle has been misused to permit delegations of legislative power that on any other conceivable account should be held as an unconstitutional delegation. This is because this court has not adapted it's decision to require Gonzalez to SORNA or State registration based upon conformance with the directives of those specific authorities or code parameters. Instead, it has created this requirement as a hybrid, using § 242 as it's intended object, out of whole cloth.

If the Separation of Powers means anything it must mean that Congress cannot give the Executive of Judicial branch a blank check to write a code of conduct governing a statute's scope that is beyond it's intended breadth and which conflicts with the very edicts and language codified into it's construction. In these areas of constitutionally prescribed powers, the Court has recognized that abdication is not part of the constitutional design.

So, if the district believed it possessed the discretion to expand the scope of § 20911 or Cal. Code 290, or any other broad authority over any State's registry laws that would include § 242 as part of it's design and scheme, it's action would subsequently create an extraordianry delegation of legislative power to the Judiciary.

But, the Judiciary's function is constrained to the business of analyzing, evaluating, making legal determinations on questions of law, and applying the law as it exists as promulgated through statutory codification processes. It is beyond the power of Article III courts to delegate the powers and authorities granted to Congress aby Article I unto itself so it can determine who is a sex offender for the purposes of expanding the limitations set by the legislature in it's original arrangement and parameters established in structuring §§ 20911, 242, and a generically applicable provision governing State's registry.

Additionally, the 10th Amendment of the Constitution provides for a parallel application of each State's legislature to determine it's own parameters of registration applicability, scope, and authority to enforce it's own laws that are beyond the scope of the federal SORNA statute. To do otherwise, would be to mark the end of any meaningful enforcement of our separation of Powers doctrine and invite the tyranny of the majority that follows when lawmaking, policy enforcement, and statutory characterization responsibilities are united in the same hands.

For these reasons, the government's assertion that registration is required so long as the probation officer discretionarily believes it should be so as a matter of policy must fail as overly broad, unconstitutionally vague, and an improper infringment of the Separation of Powers doctrine.

### Conclusion

The government here has attempted to execute a condition of supervised release that is otherwise prohibited by 34 U.S.C. § 20911(A)(5). Registration pursuant to Cal. Code 290 also does not squarely command this specific condition for a conviction of 18 U.S.C. § 242 because this federal statute is not among the list of categorical offenses constituting a sex offense. The lack of any such element in section 242 demonstrates that an act of sexual conduct need not be satisfied to secure a conviction

under this statute. For these reasons, neither the federal nor State criterion governing mandatory registration can be made in this case.

The government's assertion that registration is permissible under the crucible of discretion by the probation officer is unsupported by virtue of hte lack of any generic registration requirement that may be equally applicable to all States- in light that Gonzalez has not committed to any specific State upon his prospective release. It is in this way that the government's thumb-on-the-scale assertion cannot stand and is opposed, as a means of excess-law making affecting people's liberty, by the non-delegation doctrine of the Constitution.

For these reasons, Gonzalez asks this Honorable court to find good-cause in the points and facts presented and to remove this non-standard condition from the record. Alternatively, a full resentencing may prove necessary to effectively serve the ends of justice.

## Verification

I have read the foregoing Reply to government's opposition motion and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at Forrest City, Arkansas on this 19th day of September, 2022.

Gabriel Gonzalez
Defendant, Pro Se

Certificate of Service

I certify under the penalty of perjury that the foregoing Reply to government's opposition motion was placed in the prison's internal mail system, postage pre-paid, for service upon this court via U.S. mail on this 19th day of September, 2022. Gonzalez asks this court's clerk to serve all other interested parties via electronic notification and to serve him with a stamped filed copy of this brief.

Gabriel Gonzalez
Defendant, Pro Se

30515-112
Gabriel Gonzalez
PO BOX 9000:Low
Federal correctonal complex
Forrest CITY, AR 72336
United States



SEP 26 2022



UNITED STATES DISTRICT COURT
255 E. TEMPLE ST. ROOM 180
LOS ANGELES, CALIFORNIA
90012